Good morning, Your Honors, and may it please the Court. My name is Michael Carmel. I represent Eric De Jong and Daryl De Jong, who are the appellants in these proceedings. And if I may, I'd like to reserve five minutes for rebuttal. You'll have to keep track of your time. I will do that, Judge. Thank you. We're here on an appeal of an award by the Bankruptcy Court on a creditor's proof of pass and disgorgement of profits. I'd like to focus first, if I may, on the damages issue. The Bankruptcy Court's order on disgorgement relies entirely on restatements. There's no analysis of Arizona law. There's no analysis of other jurisdictions. Am I right in thinking that there is no Arizona case on point? Yes. But we've had a discord. The Anderson case has suggested that disgorgement is an appropriate remedy under these circumstances, and the restatements seem to suggest that. So trying to predict what the Arizona Supreme Court would say, why wouldn't it—just on the appropriateness of the remedy, not the amount for the moment—why wouldn't the Arizona Supreme Court conclude that restitution is an appropriate remedy under these circumstances? I'll first address the Anderson. If you want me to first address Anderson. Well, I know Anderson's not precisely this set of facts, but it does suggest that restitution is an available remedy. It does when you take from the land. I think that that's the major distinction between Anderson and the facts of this case. And so you can distinguish Anderson. My question is, what authority can you give us that might lead me to think the Arizona Supreme Court would reject disgorgement as a remedy? There are cases out of New Mexico. There are cases out of Texas. And I think that Arizona courts can look beyond just the restatements. They could look at other courts in other jurisdictions, and they frequently do that when there is not a specific case on point. And we provided cases out of New Mexico, Texas. The New Mexico court relied in part on an Illinois case. And the New Mexico case, the Comcast case, which I'm specifically referring to, specifically rejected disgorgement of profits, as did two separate cases in Texas. So I think that it is fair to consider the restatements, but I don't think that the restatements are the exclusive analysis. I don't think that it begins and ends there. No, they're not the exclusive one, but as I recall, the Arizona Supreme Court's always said something like, in the absence of controlling authority, in the absence of some good, strong reason to the contrary, we lean towards the restatements. Do you agree with that? I do. I do. But I don't think that there's no cases analyzing the restatements throughout the country that I was able to find that provide for disgorgement of profits in a case like this. The restatements that the appellee relies on go towards breach of fiduciary duty. They go towards copyright infringement. There's a case that Bankruptcy Appellate Panel cited Gordon, where it was a violation of the Consumer Fraud Protection Bureau regulations. But there are no restitution restatement cases, dealing with restitution, that approve or allow for disgorgement of profits. So when I'm looking at what, if I were to try to predict what the Arizona Supreme Court might decide to do with a case like this, it goes back to what's the damage that would make the property owner whole? And disgorgement of profits in a case like this is way out of line. It's not a double recovery. It's not a triple recovery. It's 35 times what the rent was. And the New Mexico case... But on the other hand, if the property owner wanted to do what your clients did, they would have made that profit. If they had come in and had the fireman done all of the things that were done, they would have made that profit. So as a property owner, they would have been entitled to do that, not in this case. And the reason why is this particular property owner was unable to run a dairy farm. It did not have the license to do that. The damages, the lost profits were totally eliminated and rejected by the bankruptcy court. They had no ability to do that. And in fact, what the facts of this case, Your Honor, are that after they acquired the property at the trustee sale, even before they acquired the property at the trustee sale, they were discussing a sale of this particular property. They went into escrow early on, right after they filed, a couple months later, and they closed after my client left the property. So I don't think that in this case, the way that you phrased the question, it works. They could not have run a dairy property versus the Indian tribe in Anderson, where the circuit said that the Indian tribe had the ability to grow crops. So I think that that's a totally different situation. Although, as I recall in Anderson, it wasn't required that they prove actual damages. In other words, in Anderson, the court said you get a restitution remedy. I'm not going to require you to come in and show that you would have grown crops and what they would have paid and how much you would have. They just took as a measure of damages the profits made by the trespasser. I believe, yes, but I believe that the underlying analysis by the in that case, deprived the tribe of farming the land, of growing crops. We don't have that in this case. The claimant, the appellee, tried in the bankruptcy court to establish a claim for lost profits, and that was just roundly rejected. I think counsel, the concern I have is that it seems to me that any remedy less than this quarter's amount of profits creates an incentive for conscious trespassers to stay there knowing that they're acting unlawfully and thinking that they can pay the damage award and come out ahead. If it really is economically efficient for them to stay there, they can always negotiate with the owner, but one of the rights that the owner has is the right not to negotiate if they don't want to. Why should we think that the Arizona courts would impose a remedy that was insufficiently robust to protect that right of the owner? The owner is entitled to get to recover in a damage award what it is to make them whole. They're not entitled to an undue windfall, and so in this case, as the cases from outside Arizona suggest, we need to analyze what was the profits derived from using the land. The cases that have been cited by us suggest that it's a fair rent, and that's what was awarded in this case. I'm not sure that answers Judge Miller's question. Why would anybody ever leave if all they had to do was pay the fair rent if they stayed as conscious trespassers? In this case, they were prepared to leave. I'm not asking that question. I'm asking if Arizona is going to develop a scheme, and the Murdoch case says that disgorgement is not limited to any particular set of facts or circumstances, why wouldn't it come up with a restitution remedy in order to prevent people from saying, I don't care whether you want to rent the property to me or not. I'll just stay, and at the end of the day, all I'll have to do is pay you the rent. Yeah, I think that that's more of a punitive award, and in this case, punitive damages were not awarded, and the cases suggest that punitive, that disgorgement is not to be used as a punitive, or that it is punitive, and that's not what is appropriate in a trespass case. Can I ask you about the amount of the disgorgement award? Yes. As I understand it, the bankruptcy court essentially said, well, your clients could have found a property that was two-thirds as big and run their operations on it, and therefore, they should only have to give up one-third of their profits. Is that essentially what it said? Yes. I'm trying, and then the BAP said, no, that's not the correct analysis. It's all the profits. Under the bankruptcy court's theory, if your clients could have found another property that was exactly as big, then there would be no disgorgement at all? If you follow the bankruptcy court? Yeah, that's why I'm having trouble with the bankruptcy court's theory. You're trying to say, your first point is no disgorgement. Your second point is, if disgorgement, we should follow the bankruptcy court's number, not the BAP's. And on that second point, I'm having trouble following the bankruptcy court's reasoning. No, Your Honor. What I'm arguing is not the profits issue. What I'm arguing is that what the claimant is entitled to, what the employee is entitled to, is the rent, is the fare. No, I understand. You're arguing that, and let's assume you don't win on that. As I read your briefs, you're also saying, well, if we don't win on that, you ought not affirm the BAP's order of entire disgorgement, but rather the bankruptcy court's order of one-third disgorgement. Are you not arguing that? Yeah, I am. Okay. I am. And in order to affirm the bankruptcy court's order of one-third disgorgement, I'd have to buy their theory that the way I arrived at one-third was because there was evidence that there was another property on which the Dijons might have run their operation that was two-thirds as big. And so I'm asking you, and I understand I'm asking you to assume that disgorgement's an appropriate remedy. Under that theory, then there would be no disgorgement at all if there were a property exactly as big out there that the Dijons could have rented? If you adopt that theory, yes. And that's why that theory doesn't seem to make any sense to me. Can you defend it? I think that what the bankruptcy court was trying to say was what was the underlying benefit to Dijon to operate at that property. My argument is that it was the use of that land for that period of time and that the benefit is determined by fair rent. No, I understand that argument. My problem is if we think disgorgement is an appropriate remedy, I'm having a difficult time figuring out how the bankruptcy court both thought it was an appropriate remedy and also only ordered one-third of the profits. Yeah. I think that that part was difficult to accept, and the bankruptcy appellate panel in that situation I think still was wrong on that point. And if I may, I would just like to touch real quickly on the trespass issue. The bankruptcy appellate panel in the first decision said that it found no place in the record where the bankruptcy court specifically directed or allowed my client to remain on the property. And I cited to the record repeatedly the February 2014 hearing, which is at volume 12, where the bankruptcy court, the first bankruptcy judge, said, stated, and this is in the record at page 2715, two different times, 2719 and 2724, that the cattle will not be removed, the feed will remain there, we're not moving the cattle, and I don't want the state court to enter an order that the debtor is no longer entitled to judge's ruling on trespass was the bankruptcy court specifically directed my client to remain on the property. No, I don't think he directed your client to remain on the property. As I read the first bankruptcy court's order, I think it's consistent with the way the second bankruptcy judge read it. He said, look, we're not going to order you off the property until June 1st. I'm not going to let the state court order take effect until June 1st. But you've heard the other side saying they want you gone right away and they want to hold you liable for damages in the meantime. And you make your decision about when you leave between now and then, but I'm not going to, but there won't be a court order telling you you need to leave between now and June 1. Why isn't, that's the way the second bankruptcy judge interpreted the order. Why is that wrong? I agree that's the way the second bankruptcy judge interpreted it. I think it's wrong because I took what the first bankruptcy judge said, say, you will stay there and it cannot be removed. You were there to protect bankruptcy estate property. So I think that what the second bankruptcy court judge said was inconsistent with what the first bankruptcy court judge ordered. If I may, I'd like to reserve the balance of my time. You may do that. Thank you. Good morning. May it please the court. My name is Kirsten Murphy. Could you speak into the microphone a little more loudly? Is this better? Yes, thank you. Good morning. My name is Kirsten Murphy and I'm here on behalf of Dalio for Parker. I want to start just briefly by talking about something that may be lost in the pages that are before you, and that is the wantonness with which the appellants disregarded the state law and daily state law of private property rights. As the bankruptcy court found in multiple factual findings after hearing trial for several days and hearing witness testimony and exhibits, he had no problem concluding that these debtors were conscious trespassers. They knew in May of 2013 that their tenancy on the property with the previous landlord who was then in bankruptcy was going to terminate in November of 2013. They knew that there was going to be a trustee sale. They attended the trustee sale. They knew that because they participated in bankruptcy proceedings in 2013 related to the previous landowner and their landlord, that their interest in the property would terminate immediately upon the trustee sale. When that occurred, they knew from the new landowner, J.L.E., that they had no right to remain in possession of that property and that J.L.E. wanted them gone. They knew from their own lawyer who advised them that if you don't leave and J.L.E. is permitted to go forward and take this to a forcible entry and detainer action, you will lose and a writ of restitution will be entered against you. Rather than deal with the consequences of the state law and their inevitable eviction, they filed for bankruptcy. And in doing so, the automatic stay protected them for a period of time from J.L.E. exercising its statutory right to an eviction proceeding. There is no question but that these debtors were conscious in their private property rights. I assume that the record supports a conscious trespass finding. Does the wantonness of the conduct have any relevance to the type of remedy? In other words, this is not a punitive damages case. These are not exemplary damages. They're compensatory damages. Does it matter in choosing restitution the nature of the conduct involved? Yes. And I think that several of the restatement sections discuss that there's a distinction between a conscious trespasser and an innocent trespasser. Right. But let's assume that they're conscious. Does that consciousness make restitution more appropriate than it might in another case? Yes. And I think that the court's, Judge Hurwitz, your citation to the Murdoch case, which is not on all fours factually with this one, but which acknowledges that restitution is a flexible equitable remedy and under the circumstances would be an appropriate remedy here to affect justice. And I think there are a couple of public policy reasons that the court has identified in this argument itself that justify an award, a restitutionary award, as opposed to a damages award, whereas damages maybe is meant to make a victim whole. Here, making the victim whole doesn't serve the interest of protecting those private property rights and serving the public policy interest at stake, which is not to force a transaction on a private property landowner, which is what essentially occurred in this case. And I'd like to respond briefly to the notion that J.L.E. could not operate a dairy on this property. Whether or not the record below is what it is in terms of J.L.E. made an alternative claim for lost profits or disgorgement, it didn't seek both. The court accepted the disgorgement remedy as opposed to lost profits. But regardless of whether it could or could not operate a dairy on that property at that time is irrelevant because the focus of the inquiry is on the debtor's conduct and the debtor's consciousness and their state of mind, not on... Did the bankruptcy court reject a lost profits measure or did it simply not adopt one? I think it's probably fair to say they rejected lost profits as to J.L.E. There are reasons for that in the record, you know, with respect to other sister companies that J.L.E. is associated with, but I think it's fair to say that a lost profits analysis as to J.L.E. was rejected, yes. So in this case, doesn't the restitution remedy in effect give your client something of a windfall? In other words, had these folks left the property on time, there's no evidence in this record that you would have made the amount of profit that they did over that time period. Well, in actuality, there is. It's a little bit more complicated than that, Your Honor, and it's not necessarily an argument that appellants have made, but the record below showed there are three separate dairies. The only dairy at issue in this case was dairy number one, we call it, which is the dairy on which the DeYoungs trespassed. There were two other dairies, and J.L.E. had business plans for use of those two dairies. They were interconnected. They couldn't do what they wanted to do on dairies number two and three because they were precluded from using dairy number one. It had to do with repairs to the dairies, filling them, getting them ready to operate their own dairies through their sister company. So I don't think it's a windfall. I do believe that the record supports that J.L.E. did suffer substantial loss in not being permitted to use its property, dairy number one, in connection with its business plan. And they put, they were the entity that put together the money. They scraped it together. You can see in the record, it comes from a number of sources. They went to the trustee sale. They took the risk. They bought the property. And, you know, buying a $6.9 million property isn't without risk. And so in doing that, they purchased and the benefit of that private property inured to them. And what the debtors did was completely disregard that and essentially attempt to vitiate their right as private property owners for at least six months. Can you address the June 1 issue? Two different bankruptcy judges. The second one interprets the friend. But just looking at the first bankruptcy judge's statement in by itself, what does it mean? And I'm sorry, that they vacated as of... Yeah, what does the bankruptcy judge says? I don't want anybody ordered off the property before June 1. I hope you can leave sooner. But I don't want to, we're not going to have an order that you get off the property until June 1, notwithstanding that the state, I lifted the state to let the forcible entry and detainer action proceed. So is that permission to stay until June 1? Or is it just, I'm not going to bring the hammer down on you until June 1? Well, looking at two things, looking at the context of what the court was doing, but then to also the court's authority. I'll take the context first. The first reference to not leaving or not allowing property to be taken from the estate was directed at JLE and other creditors and said, you can go back and you can get that forcible entry and detainer trial taken care of, but you may not apply for a writ of restitution, which would have allowed the sheriff to go out and forcibly... Right, we don't want you to take possession. You can establish your rights, but I don't want you to take possession because I'm managing the estate and I want to manage the estate in an orderly fashion. Yes, and I think that's what the court did from the beginning was manage the estate. And if you look through in the context of the proceedings, at all times, JLE maintained that it had claims for damages, filed a proof of claim. The court set a schedule, a bifurcated schedule on the reasonableness of debtors' proposed exit date and also separately on JLE's claim for damages. It was always acknowledged that JLE was making a claim beyond any rental value. So the court understood that, debtors understood that, JLE understood that. More importantly, I think debtors haven't cited anything, nor do I think they could, to suggest that a bankruptcy court could grant a right of possession to debtors when the state court had determined that they had no right of possession beginning and after December 6th. But a bankruptcy court did have the right to stay the enforcement of a state court order, ordering somebody off a property. Certainly, and debtors bore the burden of the risk of remaining on the property. And again, as to their consciousness, debtors knew that it was a gamble. They said it was a gamble and that all they wanted was time. And that's essentially what they achieved by filing for bankruptcy on the eve of the forceful entry and detainer action. Let's see if I... In terms of the issue of trespass, every court that's looked at this issue has determined, and I think as a matter of law, the trustee still conclusively established that on and after December 6th, 2013, debtors had no remaining right to possession of the property. The issue of whether or not they were a tenant at sufferance versus a trespasser, those two are not mutually exclusive. The eviction statutes are summary cursory proceedings limited solely to the right of possession. Even if they were tenants at sufferance, it seems to me, you never suffered them to stay. Correct. There was never... You can tell a tenant at sufferance, stay and I'll tell you when to leave. But I take it your client's position throughout was leave. Yes. There was never any sort of acquiescence in their right to remain on that property. And there's certainly nothing in the record to suggest that. Can you address the BAPS measure of disgorgement? Certainly. And your friend, I think quite usefully, doesn't try to defend the bankruptcy court's measure. But tell me why the BAPS wasn't engaging in fact finding when it increased the restitution award from one third to all of the profits. Certainly. The bankruptcy court made all of the preliminary findings necessary for the BAPS to calculate what 100% of the profits were. And I take it that's not really contested here, at least on appeal. Nobody's arguing that 100% of the profits was less than the number that the BAPS came up with. That's correct. They're arguing about whether you should get awarded that, but nobody's contesting the number. That's correct, I believe. The math, I think, is correct. That's a better way to put it. And based on the factual findings that the bankruptcy court made on a review of debtors' reviewed financial statements, the court... Well, if I could, I'll just give a little bit of context and background. So the bankruptcy court awarded two buckets of damages. One was the silage damages. And the way that the court looked at that, and it was a very sort of complicated analysis how we got to that point, but the notion was the reason that debtors said they stayed on the property was because they wanted to retain the value of their silage, and so that was their main benefit in staying. So he calculated a number that he thought made sense in terms of what benefit they realized in silage value and monetized silage value during the term of the trespass. Secondary to that, he said, then you also get some of their net profits based on this 1,405 additional cow number. He took 30% of their reported net profits during the operative period. Right. And the way the bankruptcy court calculated that was by saying, essentially, you could have found a property without fighting that was 70% as big, so having this one only increased your profits by 30%. Correct. And the bankruptcy appellate panel acknowledged that there was a fatal logical flaw in that argument, which is if they had had a bigger dairy available to them or a dairy of the same size, there would have been no net profit realized based on that delta. But so then on appeal, the issue of double counting of the silage was raised to the first bankruptcy appellate panel, and that appellate panel said, we agree you can't use an expense item like silage as part of a net profits analysis or benefits analysis. It's an expense item. What you need to do is go back and analyze the business's net profits, which is the business's revenues less their expenses, and so that's exactly what the second bankruptcy appellate panel affected. That takes me to my second question. In the Anderson case, there were crops being grown on the land. Was the silage here being grown on the land? No. The silage is delivered or- Was delivered from somewhere else? Yes. Okay. And it's stored there and used to feed the cows that are on the land. Yes. I want to talk just briefly about the idea that this- that discouragement here would be punitive. Indeed, it's not, because as in Anderson and as the restatement section suggests, the proper measure is revenues less expenses. Debtors were given every expense that they claimed on their own reviewed financial statements. There's not a punitive aspect to this to recover their expenses, and they've kept those. The only delta here is that profit, and who should benefit by their intentional trespass? Not the debtors under any measure of the law. And I think to the court's point about what an Arizona court would do here, I don't think it's- there's any question that Anderson, although a Ninth Circuit case and although factually distinguishable, and Murdoch, which allows for a restitutionary measure of approvingly the restatement section 929, which also permits for a restitutionary measure of damages, and have cited the third restatement approvingly as well. I don't think there's any question but that the court would follow the rest- the restatement in considering an award here. Unless there are other questions, I'm- I don't think there are. Thank you. Okay. Thank you. I'll first answer, Judge Horowitz, your question about the dollar- the profit amount, the $10,200 per day. There is not- that's not challenged on appeal. That was a fact finding, and I could not properly, I think, argue that that was error. So that is not something that's subject to the appeal. Silage also is not on appeal. Because it got subtracted- it got wrapped back into expenses. That is- that is correct. With respect to disgorgement, disgorgement is appropriate if someone takes from the land. If oil is taken, if timber is taken, if minerals are taken, if you pull rock out, disgorgement there would be appropriate because you're taking from the land. We don't have that case here. We don't have cattle that were grazing on the property. Absolutely nothing was taken from the land. The land was used, I acknowledge, to operate the business, but it was not the source of any revenue itself. With respect to the argument that JLE had this master plan, that was pretty much rejected. In fact, it was rejected by the bankruptcy court. They tried to assert a lost profits claim using financial information from a sister entity, and that was just specifically rejected by the court. JLE presented no evidence at all of any damages that it sustained. None. They sought repairs. They didn't present any evidence. They filed a claim for restoration. They presented no evidence. So everything was rejected with the exception of the rent claim. The court determined what reasonable rent was. We've never challenged that either. There was three tons of hay that was converted. We don't challenge that on appeal. That is the universe of the damages that JLE suffered. If we're looking at compensatory damages here, that's where the analysis, I believe, should begin and end. That was their damages. With respect to this specific property, they flipped it in a very simple sense. My clients on staying on the property had zero impact to the penny on what they wanted to sell it for. Zero impact. It was sold well within the time frame that it was originally contemplated. My position with respect to the bankruptcy court's order on June 1st is that it was more than just state. It was a directive. It was a directive by the court to say those assets shall remain on the property. It was to protect the overall bankruptcy estate. The first bankruptcy judge did not want there to be harm generated there. The debtors were operating that business to pay I think that it was a direction. In conclusion, the profits that were derived from the wrongful use of the land, in my view, is measured by fair market rent. Any additional profits are a result from the labor. That's the Comcast case. It's pretty much right on point. There are no cases cited or that I could find that reference the restatements and extend the restatements on a case like this were trespasses. The Appalese cite none. I cited at least one case, Comcast, which did look at the restitution section 40 and rejected discouragement of profits. The discouragement award here is only supported by the restitution. I think that this is just an inappropriate extension, a novel extension of the restatements. It's a major expansion of damages law in Arizona that I don't think it's done without any analysis of what other courts in other jurisdictions have done. I think that with respect to that discouragement, it needs to be reversed. Unless you have any other questions, I have nothing. I don't believe we do. Thank you. The case just argued is submitted. Again, we thank helpful counsel on this interesting case.
judges: Graber, Hurwitz, Miller